***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford. Defendant has shown good grounds to reconsider the evidence; therefore, the Full Commission REVERSES the Opinion and Award of Deputy Commissioner Ledford.
 ***********
The Full Commission finds as fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
 2. Defendant employed three or more employees on January 7, 1995. *Page 2 
3. The employer-employee relationship existed between Plaintiff and Defendant on January 7, 1995.
4. Defendant is a duly qualified self-insurer, initially with Sedgwick James of the Carolinas, Inc. and subsequently Federated Rural Electric Insurance Corporation as the servicing agents.
5. Plaintiff's average weekly wage was $633.50, which generates a compensation rate of $422.35.
6. Plaintiff sustained an injury by accident arising out of and in the course of his employment with Defendant on January 7, 1995.
7. Plaintiff became disabled on February 1, 1995 and was paid compensation for temporary total disability until he returned to work on May 15, 1995.
In addition to the medical records and related correspondence that were stipulated by the parties, the Full Commission takes judicial notice of the Form 26 Agreement that was approved by Deputy Commissioner Ledford on February 4, 2000, pursuant to which Plaintiff was paid permanent partial disability benefits for a 10 percent rating to his neck.
The Full Commission has received into evidence a letter from Plaintiff's counsel dated December 27, 2004, as well as a payment history that shows that the date of last payment of indemnity compensation pursuant to the Form 26 was March 9, 2000.
 ***********
Based upon the competent evidence adduced from the record, the undersigned make the following additional
 FINDINGS OF FACT
1. On January 7, 1995, Plaintiff, a 38-year-old employee of Defendant Tideland *Page 3 
Electric Membership Cooperative, suffered a cervical spine injury at C6-7 while lifting a pole trailer from a truck during the course and scope of employment.
2. Plaintiff began to miss time from work because of the injury on February 1, 1995, and, pursuant to a Form 21 Agreement for Compensation for Disability, received temporary total disability benefits from that date to May 15, 1995, the date on which he returned to work for Defendant.
3. Plaintiff's average weekly wage after returning to work exceeded the wages he was earning at the time of the injury because of a pay increase due to wage and salary study. Plaintiff continues to work for Defendant to this day. He has been promoted and has continued to earn substantially greater wages than he was earning at the time of the injury.
4. On January 10, 1995, Plaintiff presented to Stephen R. Ainsworth, M.D., his family physician, with complaints of pain in the back of the neck and left shoulder. Dr. Ainsworth ordered an MRI, which he interpreted as indicating a ruptured disc at C6-7.
5. On January 30, 1995, Plaintiff came under the care of Ira M. Hardy, II, M.D. Dr. Hardy restricted Plaintiff to light-duty work for three weeks, including no lifting and no overhead work. A cervical myelogram and post contrast CT scan performed on February 1, 1995 showed a large left C6-7 extruded disc that distorted the spinal cord and impacted the C7 nerve root. Dr. Hardy recommended an anterior C6-7 discectomy with excision of a herniated disc, which he performed on February 17, 1995.
6. The results of the surgery were favorable, with Plaintiff experiencing no arm pain, numbness, or tingling. Plaintiff returned to work on May 15, 1995, and on August 2, 1995, Dr. Hardy stated that Plaintiff had reached maximum medical improvement and could continue with full employment. However, subsequent visits revealed recurring discomfort in the neck and left *Page 4 
arm.
7. On February 27, 1996, Plaintiff began treating with Rudolph J. Maier, M.D. On June 4, 1996, Dr. Maier assigned a ten percent impairment rating to Plaintiff's neck based on the surgery Plaintiff underwent as well as his complaints of persistent pain. Subsequently, in response to a questionnaire from Plaintiff's attorney, he also assigned a ten percent impairment rating to Plaintiff's left arm. During his deposition, Dr. Maier testified that Plaintiff's impairment rating to the cervical spine had increased to 15 percent based on the Industrial Commission's Rating Guide, since his previous rating of ten percent was based on the AMA Guide. Dr. Maier later retracted the separate rating to Plaintiff's arm and testified further that the 15 percent rating he assigned to Plaintiff's cervical spine took into account any problems Plaintiff had with his left arm.
8. On referral from Dr. Maier, David Tomaszek, M.D., treated Plaintiff from October 2, 1996 to September 3, 1998. Dr. Tomaszek performed a cervical nerve block procedure on October 28, 1996, and on January 2, 1997, a review of a CT of Plaintiff's cervical spine revealed no evidence of spinal cord or nerve root compression. On February 17, 1998, Dr. Tomaszek rated Plaintiff as having a ten percent impairment to his cervical spine. On August 12, 1999, Dr. Tomaszek indicated that Plaintiff had reached maximum medical improvement on February 17, 1998. It was only after he was presented with the questionnaire from Plaintiff's counsel that Dr. Tomaszek assigned a separate rating of 15 percent to Plaintiff's left arm. Dr. Tomaszek did not testify in this case and therefore did not explain the basis for his separate rating to the arm.
9. On October 23, 1998, Plaintiff was first seen by Daljit S. Buttar, M.D., on referral from Dr. Tomaszek. At that time, Plaintiff was complaining of pain in the back of his neck, *Page 5 
shoulder, and left arm. A nerve conduction study and an electromyelography performed on November 11, 1998 revealed evidence of a mild to moderate degree of bilateral carpal tunnel syndrome, but no electrophysiological evidence for cervical radiculopathy or peripheral neuropathy. On September 8, 1999, in response to the questionnaire from Plaintiff's attorney, Dr. Buttar assigned a zero percent impairment rating to Plaintiff's cervical spine.
10. Plaintiff reached maximum medical improvement on February 17, 1998.
11. On November 17, 1999, the parties entered into a Supplemental Agreement as to Payment of Compensation (Form 26), for payment of a 10% rating to Plaintiff's neck. The Industrial Commission approved the Form 26 on February 4, 2000. The date of last payment of compensation pursuant to the Form 26 was March 9, 2000.
12. Scott J. Spillmann, M.D., performed an independent medical examination of Plaintiff on February 10, 2000. At Dr. Spillmann's request, Plaintiff underwent a functional capacity evaluation, the results of which showed no difference between the left and right upper extremity in terms of function. Thereafter, Dr. Spillmann opined that Plaintiff had a 10 percent permanent partial impairment of his cervical spine and no additional or separate impairment of his left upper extremity. Dr. Spillmann later changed his rating to 20 percent to the neck.
13. On March 21, 2002, Plaintiff began treating with Raymundo D. Millan, M.D. Plaintiff continues to be treated by Dr. Millan with conservative treatment modalities including physical therapy and medication management. Dr. Millan does not recommend surgery for Plaintiff at this time.
14. Plaintiff underwent an additional cervical MRI on October 7, 2004 and was seen by Scot Reeg, M.D., on referral from Dr. Millan for an independent surgical evaluation on October 28, 2004. Dr. Reeg was of the opinion that Plaintiff was a possible candidate for further surgery to explore the fusion site at C6-7 and at the same time address the C5-6 pathology reflected on recent MRI, but noted that Plaintiff was not interested in having *Page 6 
surgery. Dr. Reeg encouraged Plaintiff to continue his normal work activities and medications and recommended that Plaintiff perform a home exercise program in lieu of formal physical therapy.
15. Plaintiff underwent another independent medical evaluation on February 8, 2006 with Thomas E. Melin, M.D. Dr. Melin initially testified that Plaintiff was a possible candidate for surgery, and opined that the C5-6 degeneration was related to the prior fusion at C6-7 because of adjacent segment deterioration. However, upon learning that Plaintiff continues to be able to perform heavy work, Dr. Melin indicated that he would be less inclined to recommend surgery. Dr. Melin assigned a 12 percent rating to Plaintiff's back, which took into account the residual pain Plaintiff experiences in his left arm. Because Plaintiff's left arm complaints originate from the injury to his neck, Dr. Melin did not believe it was appropriate to assign a separate rating to Plaintiff's arm.
16. On February 16, 2006, Plaintiff returned to his treating physician, Dr. Millan, who specifically noted that Plaintiff had pain mostly in the neck without radiation to the upper extremities. Dr. Millan also indicated that Plaintiff had 5/5strength in the upper and lower extremities. Plaintiff was instructed to continue his present medication and return in four months for follow up evaluation. According to Dr. Millan, Plaintiff's condition has improved over the past 4 years.
17. The overwhelming weight of the competent and credible evidence in this case establishes, and the undersigned so find, that Plaintiff is not entitled to a separate impairment rating to the left upper extremity. Whatever difficulties Plaintiff has experienced in his left arm are attributable to the injury to his cervical spine, and Doctors Melin, Spillmann and Maier took *Page 7 
the arm complaints into account when they rated the neck. Moreover, the FCE ordered by Dr. Spillmann showed no difference between the left and right upper extremity in terms of function, and did not demonstrate any impairment in the left arm. In fact, the FCE results demonstrated less than full effort on Plaintiff's part. Dr. Millan found no decrease in strength in the left arm and full range of motion. While the results of the Kin/Com test show some differences between the right and left arm, there is no medical testimony that would support a finding that these differences are attributable to injury, as opposed to the fact that Plaintiff is right arm dominant, and no medical testimony that the differences reflected on the Kin/Com test are in any way causally related to the injury Plaintiff sustained on January 7, 1995.
18. On May 15, 1995, Plaintiff regained the capacity to earn the same or greater wages than he was earning at the time of the injury. Even though he periodically missed work to attend a doctor's appointment, he retained the capacity to earn the same or greater wages than he was earning at the time of the injury in the same employment.
19. The overwhelming weight of the competent and credible evidence establishes, and the undersigned so find, that Plaintiff is not a candidate for surgery at this time. Dr. Millan, the authorized treating physician, testified that he would not recommend surgery for Plaintiff at this time because his pain is tolerable, he doesn't have significant neurological deficits, and he is functioning well in his employment. There is no evidence that surgery at this time is reasonable and necessary to effect a cure, give relief, or lessen the period of disability.
20. Plaintiff's prior surgery at C6-7 caused an acceleration of deterioration at the adjacent cervical level, C5-6.
21. Regarding plaintiff's permanent partial disability rating, the Full Commission gives greater weight to the testimony of Dr. Rudolph Maier, a neurologist who treated plaintiff *Page 8 
for pain management, over that of Dr. Tomaszek, who did not testify in this matter; Dr. Millan, whose permanent partial assessment did not comport with the North Carolina Industrial Commission's rating guidelines; Dr. Melin, who only performed an independent medical examination, and Dr. Spillmann, who is an occupational medicine specialist.
21. Based on the medical testimony of Dr. Maier, the Full Commission finds that Plaintiff retains a 15 percent impairment to his back as a result of the January 7, 1995 injury.
22. On the Form 26 Agreement that was approved by the Industrial Commission on February 4, 2000, Defendants agreed that "all causally related medical will continue to be paid in accordance with the North Carolina Workers' Compensation statutes." However, further surgery to the neck is not reasonable or necessary to effect a cure, give relief, or lessen the period of disability at this time.
 ***********
The foregoing Stipulations and Findings of Fact engender the following
 CONCLUSIONS OF LAW
1. Disability is defined by statute as the "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 97-2(9). Plaintiff regained the capacity to earn the same or greater wages that he was earning at the time of the injury on May 15, 1995. Therefore, Plaintiff was not disabled within the meaning of N.C. Gen. Stat. §97-2(9) after May 15, 1995 and is therefore not entitled to benefits pursuant to either N.C. Gen. Stat. §§ 97-29 or 97-30.
2. When Plaintiff entered into the Form 26 Agreement for payment of the rating to his back, he made an election to receive benefits pursuant to N.C. Gen. Stat. § 97-31, as opposed to N.C. Gen. Stat. § 97-30. *Page 9 
3. As a result of the injury of January 7, 1995, Plaintiff retains a 15 percent permanent partial disability to his back. N.C. Gen. Stat. § 97-31(23).
4. Plaintiff retains no permanent partial disability to his arm as a result of the injury of January 7, 1995. N.C. Gen. Stat. § 97-31(13).
5. Pursuant to the Form 26 Agreement approved by the Industrial Commission on February 4, 2000, Defendants are responsible for payment of medical compensation that is causally related to the injury of January 7, 1995.
6. Defendants shall not be ordered to pay for further surgery to Plaintiff's neck at this time, because further surgery is not presently reasonable or necessary to effect a cure, give relief or lessen the period of Plaintiff's disability. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Stipulations, Findings of Fact and Conclusions of Law, the Full Commission enters the following
 A W A R D
1. Defendants shall pay Plaintiff compensation for an additional five percent permanent partial disability to his back, for a period of 15 weeks at the rate of $422.35 per week. Such benefits have accrued and shall be paid to Plaintiff in a lump sum, subject to the attorney fee hereinafter approved.
2. Plaintiff's claim for additional temporary total and temporary partial disability benefits is hereby DENIED.
3. Plaintiff's request for an order directing Defendants to pay for surgery to his neck is hereby DENIED at this time. *Page 10 
4. Plaintiff's claim for additional compensation for permanent disability to his arm is hereby DENIED.
5. An attorney fee in the amount of 25 percent of the indemnity compensation awarded to Plaintiff is approved for his counsel. This amount shall be deducted from the sum due Plaintiff and paid directly to Mr. Roney.
6. Defendants shall pay the costs.
This the ___ day of July 2007.
 S/_______________ PAMELA T. YOUNG COMMISSIONER
CONCURRING:
S/_______________ BUCK LATTIMORE CHAIRMAN
S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1